# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | | |
|---|---|---|
| MARIA GOULD HOLCOMB, and HENRY C. HOLCOMB, | ) ) ) | |
|     Plaintiff, | ) ) | |
| v. | ) ) | Case No.   CV412-111 |
| WELLS FARGO BANK, N.A. and FEDERAL HOME MORTGAGE CORPORATION, d/b/a FREDDIE MAC, | ) ) ) ) ) | |
|     Defendants. | ) ) | |

## <u>ORDER</u>

In this lender-liability case, plaintiffs Marla and Henry Holcomb move to compel discovery from defendants Wells Fargo Bank, N.A. (WFB) and the Federal Home Loan Mortgage Association (Freddie Mac). Doc. 28, *as amended*, doc. 33. Defendants oppose and request oral argument. Docs. 30 & 32. [1] WFB moves to withdraw its Fed. R. Civ. P. 36(b) admissions (doc. 31), and it is granted, per the plaintiffs' agreement.

---

[1] Their hearing request motion is **DENIED**. Doc. 32.

Doc. 34. And plaintiffs move to amend their motion to include a missing, "duty to confer" certificate. Doc. 33.[2]

## I. BACKGROUND

Marla Holcomb owned a North Georgia home and was current on its mortgage when she asked WFB to lower her interest rate.[3] Doc. 10 at 3. A WFB representative told her that WFB would not consider a loan modification until she first missed three monthly mortgage payments. *Id.* So, she did. *Id.* Holcomb's default triggered the bank's mortgage foreclosure process, but WFB's attorney assured her that the loan was approved "for a special repayment program." *Id.* Two follow-up letters confirmed this. *Id.* WFB's attorney later sent Holcomb a "notice of foreclosure sale," which WFB told her to disregard, so she did. *Id.*

Holcomb next received a WFB letter announcing that it had changed its mind and would not modify the loan. Just days later -- on January 3, 2012 -- WFB foreclosed on her home. Doc. 10 at 3. But Holcomb was unaware of that until January 11, 2012, when she received two more WFB

---

[2] This motion, unopposed under LOCAL RULE 7.5, is **GRANTED.**
[3] For the purpose of this Order, the Court is accepting as true the factual assertions contained in plaintiffs complaint (doc. 1-1), as well as their portion of the Joint Status Report. Doc. 10.

letters.   The first invited her to explore her options to avoid foreclosure. The second was from its lawyer, informing her that "Freddie Mac now owns the property . . . as the result of a foreclosure."   *Id.*

Alleging that she was misled, never received notice of the foreclosure sale, and could have cured her default, Holcomb sued.   Doc. 1-1; doc. 10 at 3.   She contends that the defendants committed various lender-liability wrongs.[4]   Her husband joins her because "he used the home with his wife and has been affected by the actions against [her]."   Doc. 10 at 3-4. WFB denies liability and insists that it timely and consistently communicated with Marla Holcomb but she failed to transmit required documentation to it in a timely manner.   It denies it ever misled her, too.

---

[4]   She plies, *inter alia*, promissory estoppel, contract breach, fraud, bad faith, and emotional distress claims.   Doc. 1-1 at 5-6; doc. 10 at 5; doc. 28-1 at 28; *see Joseph v. Fed. Home Loan Mortg. Corp.*, 2012 WL 5429639 at * 2-3 (N.D. Ga. Nov. 6, 2012) (wrongful foreclosure case brought by plaintiff told to stop making payments in order to qualify for a loan modification; "If [the lender] did make such a statement and foreclosed anyway, Plaintiff has stated a plausible claim for wrongful foreclosure based on [its] failure to exercise the power of sale fairly and in good faith."); *Odimbur v. Wells Fargo Bank*, 2012 WL 680057 at * 4 (C.D. Cal. Mar. 1, 2012) (denying motion to dismiss three-missed-payment, promissory estoppel claim); *see also Szlek v. U.S. Bank Nat'l Ass'n*, 2012 WL 3756941 at * 3 (N.D. Ga. Aug. 28, 2012) (rejecting borrower's promissory estoppel claim against lender, in promised loan modification case, "because the promise alleged by Plaintiff is too vague"); *Zions First Nati'l Bank v. Macke,* 316 Ga. App. 744, 752-53 (2012) (lender violated terms of mortgage loan by accelerating debt before 15 day cure period had expired); *see also* Daily Report at 1 (Dec. 14, 2012) (borrower awarded $1.2 million against that bank).

Doc. 10 at 4; doc. 30-7 at 11-12.   And Freddie Mac insists it simply purchased the property at foreclosure, breaching no duty to the Holcombs. Doc. 4; doc. 10 at 4.

The plaintiffs served the defendants discovery requests aimed at uncovering all the documents, policies, and people who were behind their loan modification and foreclosure, plus similarly situated others.   They are unhappy with defendants' responses.   In their motion to compel, they complain that the defendants have wrongfully asserted privileges, made bad-faith "clarification" requests prior to answering, and failed to provide adequate responses (by stating, e.g., that when the information is obtained it will be provided pursuant to a mutually agreeable arrangement).   Doc. 28 at 1.

Defendants respond that the plaintiffs have mischaracterized their actions and that they have answered the discovery as best they can, especially since some "discovery requests were addressed to the party without ownership or control of the requested information"-- *i.e.*, plaintiffs sought from WFB material in Freddie Mac's possession or control.   Doc. 30 at 2.   Defendants also assert that plaintiffs exercised

their Fed. R. Civ. P. 26(c) and 37(a)(2) duty to confer with defendants on only some, but not all, matters, so this Court should deny the motion "and permit the parties to address the discovery dispute pursuant to their obligations under the federal rules."   Doc. 30 at 2.   Plaintiffs reply that they fulfilled their duty to confer and that defendants are still obstructing some of their discovery.   Doc. 35.

## II.   GOVERNING STANDARDS

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any *nonprivileged* matter that is relevant to any party's claim or defense. . . ."   Fed. R. Civ. P. 26(b)(1) (emphasis added).   "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."   *Id.*

Those who invoke a privilege must prove its existence.   *In re Grand Jury Investigation*, 842 F.2d 1223, 1225 (11th Cir. 1987). Hence, parties cannot simply claim an "in-house" privilege, but only those recognized by law.   And evidentiary privileges, for that matter, are disfavored.   *Adkins v. Christie*, 488 F.3d 1324, 1328 (11th Cir.

5

2007); 28 U.S.C. § 2074(b).

"Where a motion to compel is granted, attorney fees and expenses must be awarded to the prevailing party unless there was no good faith effort to resolve the motion, the non-disclosure was substantially justified, or other circumstances make an award of expenses otherwise unjust. Fed. R. Civ. P. 37(a) (5)." *FormFactor, Inc v. Micro-Probe, Inc.*, 2012 WL 1575093 at * 9 (N.D. Cal. May 3, 2012). "Additionally, Rule 37(b) requires a disobedient party to pay the reasonable expenses, including attorney fees, caused by the violation of the order. *See* Fed. R. Civ. P. 37(b)(2)(C)." *Id.*

## III.   ANALYSIS

### A.   Duty to Confer

Defendants first insist that plaintiffs have failed to (a) certify their good faith efforts to resolve this dispute without Court intervention, and (b) comply with Rule 26.5's requirement that the movant shall quote each discovery request verbatim and include the specific ground for the motion or objection.   Doc. 30 at 7-9.   On part (a) of their argument defendants specifically note that plaintiffs failed to include an express certification.

6

Doc. 30 at 7.   On part (b), they say that plaintiffs did not negotiate enough.   *Id.* at 7-9.

By local rule this Court reminds parties of their duty to confer. Local Rule 26.4 ("[c]ounsel are reminded that Fed. R. Civ. P. 26(c) and 37(a)(2) require a party seeking a protective order or moving to compel discovery to certify that a good faith effort has been made to resolve the dispute before coming to court.").   That rule is enforced. *Scruggs v. Int'l Paper Co.*, 2012 WL 1899405 at * 2 (S.D. Ga. May 24, 2012).[5]

The plaintiffs did provide a certification, just not a standalone certificate, doc. 28 at 17, though they cured that via amendment.   Doc. 33.   For that matter, substance, not form, controls.   Plaintiffs' recitation of *some* of its discovery questions and responses (doc. 28-1 at 3-17) are adequate, though not perfect.   So, the Court, which simply needs to be

---

[5]    Requiring meaningful consultation can lead to informal resolution and thus conservation of court resources.   *Avera v. United Airlines, Inc.*, 2012 WL 794160 at * 2 (11th Cir. Mar. 13, 2012) (magistrate judge did not abuse his discretion in denying, without prejudice, plaintiff's motion to compel discovery where plaintiff had not sought to resolve his discovery dispute with defendant before filing the motion); *In re Rhodes Companies, LLC*, 475 B.R. 733, 742 (D. Nev. 2012) (affirming bankruptcy court's denial of protective-order motion based on moving party's failure to include such certification, rejecting "futility" assertion); *Jo Ann Howard & Associates, P.C. v. Cassity*, 2012 WL 1247271 at * 8 (E.D. Mo. Apr. 13, 2012) (rejecting compulsion request in part because "the failure of the parties to communicate *materially* impeded their resolution of this matter.") (emphasis added).

able to see what was asked and how it was answered, will address those.

Meanwhile, defendants' substantive argument -- that plaintiffs did not confer *enough* -- is more difficult to address.  Just as "there is "no magic formula" for determining whether a particular government action constitutes a taking of property, *Arkansas Game and Fish Com'n v. United States*, ___ U.S. ___, 133 S.Ct. 511, 518 (2012), there is none for assessing good faith here. The totality of the facts and circumstances necessarily must be considered.

The record shows that on the document requests the parties did confer directly through an exchange of letters and emails.  Doc. 28-1.  But "[p]laintiffs' counsel's correspondence," defendants insist, "shows he failed to comply with the good faith requirement and that [defense counsel] attempted to address the concerns in a timely matter."   Doc. 30 at 7.  The problem, defendants explain, is that "[p]laintiffs' counsel sent five letters to [defense counsel] raising different and equally vague issues about [d]efendants' discovery responses."   *Id*.

The Court will address this argument by first examining the plaintiffs' document requests, which called on WFB to produce (Request #

1) "[a]ll policies and requirements applicable to the procedure for a modification request for the type of loan you were holding for Ms. Holcomb in effect from January 2, 2011 to date." Doc. 28-1 at 15. They also sought (Request # 2) "[t]he complete file pertaining to Mrs. Holcomb's request," the (Request # 3) "payment history on her loan," and (Request # 4) the "files on all other borrowers who requested loan modification who were not in default at the time of the requests from January 2, 2011 to date." *Id*.[6]

On Request # 1 WFP agreed to produce relevant, unprivileged documents at a mutually agreeable time and place. Doc. 28 at 3; doc.

---

[6] The Court's review is hampered by the fact that, in their "compel" brief plaintiffs related their Document Request 4 as "The complete file pertaining to the default and disclosure of the subject property including those documents pertaining to Freddie Mac's acquisition of the loan and property." Doc. 28 at 5. While plaintiffs point out that this is from their request for production served with their complaint, *id.*, n 1, they furnish a *different* Request for Production of Documents with their brief's "Index." *See* doc. 28-1 at 13-15. The defendants, for that matter, also note this disconnect, doc. 30 at 12-13, to which plaintiffs fail to respond in their reply brief. Doc. 35. The Court will limit its review to that shorter version (i.e., doc. 28-1 at 15).

Further burdening this Court: The plaintiffs listed, on page 1 of their Index of Exhibits, their opening discovery as "Attached," yet have failed to attach them (e.g., WFP's and Freddie Mac's August and September, 2012 responses). Defendants likewise have failed to cite accurately their documents on the docket. For example, they claim they "produced the entire loan file. *See* Exhibit D." Doc. 30 at 12. But "Exhibit D" is a "confer" letter. Doc. 30-4. Perhaps they mean "Exhibit J." Doc. 30-10. Such imprecision impedes an otherwise tedious review of the requests and responses, then the "confer" chain, as required to discern any Rule 37 violations.

9

30-1 at 3.   On October 1, 2012, plaintiffs' counsel wrote WFB's counsel and noted that its response was late, so its objections were moot.   More importantly, WFB furnished them with "a CD disc of over 760 pages" but no accompanying means to identify which pages responded to which request.   Doc. 28-1 at 16.   Plaintiffs supplied defendants with CD excerpts to show that it would require speculation to connect the dots together.   *Id.* at 19-24.   Hearing nothing, plaintiffs wrote again, on October 5, 2012.   Doc. 28-1 at 25.

WFB says it contacted plaintiffs and "offered to help upon review of the discovery responses."   Doc. 30 at 8.   The email from defense counsel does not deny that WFB sent plaintiffs an undifferentiated mass of documents.   Nor did it claim that there had been a mistake in production. Instead, its counsel simply said: "We'll certainly be happy to work with you to supplement our responses.   We can talk in more detail once I've had a chance to take a little further look."   Doc. 28-1 at 34.

A good faith answer would have been: "That was an honest mistake. I'll send you that information immediately."   Yet, that answer was *not* given.   And defense counsel weighed the process down even further by

10

making plaintiff's counsel wait: "we can talk in more detail. . . ." Plaintiff's counsel, Stanley E. Harris, Jr., then responded with an October 5, 2012 fax letter, stating that he had not heard from defense counsel and set an October 15 compliance deadline.   After that, Rule 37 would be invoked.   Doc. 28-1 at 25.   He also complained of other deficiencies in the defendants' discovery responses, most particularly plaintiffs' quest for the lenders' loan-modification policies.   *Id.*

Defense attorney Tracy Starr then tele-conferred with Harris.   Doc. 28-1 at 27.   In a follow-up, October 9, 2012 letter, Harris summarized that conversation: WFB stood on Freddie Mac's "restrictions" on disclosing its policy (incidentally, neither defendant has moved for a protective order,[7] nor cited then or here any law to uphold any privilege). Starr also claimed that plaintiffs had not requested "certain information." Harris pointed out Starr's disclosure that Freddie Mac was the investor and WFB acted in its interest.   That means, he reasoned, that WFB was Freddie Mac's agent and thus WFB's discovery responses should have confirmed at least that much.   *Id.*   Yet, they did not.   *Id.* at 28.   After

---

[7]   *See, e.g., U.S. ex rel. St. Joseph's Hosp., Inc. v. United Distributors, Inc.*, 2012 WL 5511729 at * 5 (S.D. Ga. Nov.  14, 2012) (granting partial relief to protective-order movant).

supplying further grounds to justify disclosure, Harris noted WFP's promise to supplement the CD response with an index and actually supply cross-references for its documents. *Id.*

On October 12, 2012, WFB supplemented its responses to plaintiffs' requests for admissions, as well as to plaintiffs' supplemental interrogatories. Doc. 30-8. And, on October 15, 2012, WFB and Freddie Mac each produced an "Index of Documents SFB 0001-1763, Produced on September 10, 2012." Doc. 30-10 at 1-7. The WFB response tied specific document clusters (by their Bates stamp numbers) to each document request. Doc. 30-10 at 1-4. It stood on its refusal to provide files on other borrowers (obviously plaintiffs want to see if WFB did to others what plaintiffs claim it did to Marla Holcomb) because WFB "is prohibited by law from distributing the confidential financial information of its clients to third parties." Doc. 30-10 at 3. But, WFB failed to cite any particular precedent. Harris wrote back on October 16, 2012, further complaining of defendants' non-responsiveness. Doc. 28-1 at 30-32. He filed plaintiffs' compel motion on October 30, 2012. Doc. 28.

As for the document requests, the Court is satisfied that the duty to

12

confer requirement was met.   As for plaintiffs' other requests it is a closer call, but the correspondence and teleconference place plaintiffs over the line on the matters reached here.   Thus the Court rejects defendants' "certification" argument outright, but partly accepts its "duty to confer" argument.   That leaves the substantive dispute here -- whether defendants satisfactorily complied with plaintiffs' discovery requests.

## B.   Document Requests

To reiterate, plaintiffs requested that WFB (Request # 1) produce "[a]ll policies and requirements applicable to the procedure for a modification request for the type of loan you were holding for Ms. Holcomb in effect from January 2, 2011 to date." Doc. 28-1 at 15. They also sought (Request # 2) "[t]he complete file pertaining to Mrs. Holcomb's request," the (Request # 3) "payment history on her loan" and (Request # 4) the "files on all other borrowers who requested loan modification who were not in default at the time of the requests from January 2, 2011 to date."   *Id.*

The parties' discovery dispute here has ultimately come to rest *not* on the actual document disclosure on Requests ## 1-3, but on the lack of

differentiation -- defendants' failure to tell plaintiffs which of the documents that defendants pertained to which request.    Hence, defendants failed to provide them with an index of some sort.   Plaintiffs complain that "no 'index' was provided."    Doc. 28 at 15, 16.

But defendants say that they "produced their document indexes on October 15, 2012," and their documentation establishes that.   Doc. 30 at 8.   And prior to that, they reason, they were asked to produce the loan file, which they did, but plaintiffs never did specify what sort of index they wanted: "The request did not seek an index, and Defendants do not know what sort of index to which Plaintiffs' counsel contends he is entitled." Doc. 30 at 10.

Plaintiffs in fact did specify what they wanted: that the documents produced be referenced to each of their document requests.   And it is undisputed that defendants initially failed to comply.   Only after Harris wrote to complain did they finally do so on October 15, 2012.   Doc. 30-10. Defendants claim that they "voluntarily provided an 'index' which identified *which* Bates stamped documents responded to *which* requests." Doc. 30 at 12 (emphasis added).   Of course, that is what they should have

14

produced *up front* (i.e., tie each pile of documents to its corresponding discovery request, commonly known as an *index*).  They thus were being obstructionistic.

Still, the "confer" process worked.  Plaintiffs were unhappy, there was some back and forth, and defendants ultimately coughed up that information -- *prior* to the motion to compel.  So, the Court rejects the plaintiffs' compulsion and sanctions request on that score, as the record shows that they in fact succeeded in prying the indices out of defendants just before they filed their motion to compel.  That it may have been exasperating to plaintiffs' counsel (his need to dictate and send compulsion letters) is understandable, but the Rules draw the line at when cost-shifting sanctions may be awarded, and that line was drawn at compliance *prior* to the filing of a compel motion.[8]

Meanwhile, plaintiffs do correctly illuminate another WFB

---

[8]  It is worth noting, however, that pre-filing obstructionism is certainly *not* the way to practice before this Court.   Plaintiffs have not invoked the sanctions mechanism of Fed. R. Civ. P. 26(g), which requires the imposition of an "appropriate sanction" on either the party or the attorney ("or both") who improperly certifies that a discovery response is complete, consistent with the rules, and not interposed for purpose of delay or needlessly increasing the cost of litigation. Rule 26(g)(1),(3).   The Court will not here resort to that rule *sua sponte*, but defense counsel should bear that rule in mind before submitting additional discovery responses in this or any other case before this Court.

roadblock in response to their first document request: WFB "states that the policies and guidelines pertaining to the loan modification request at issue in this matter are the business confidential property of Freddie Mac."   Doc. 30-10 at 1.   In their latest brief plaintiffs emphasize that "it is glaringly clear no policies pertaining to the loan modification have been disclosed."   Doc. 35 at1.

The Court grants plaintiffs relief to the extent that WFB is withholding any documents based on its own (or any other's) business policies, much less any "law or privilege" -- for the simple reason that WFB carries the burden of *identifying* any law or privilege and showing why it applies here.   It has not met its burden (generic assertions won't do).   Mystifyingly, plaintiffs did not, once told by WFB that Freddie Mac was the proper target, issue a new document request to Freddie Mac for those documents. [9]

On the other hand, both defendants are represented by the same counsel, and it is undisputed that WFB implemented Freddie Mac's policies.   To save time, then, the Court deems the request made to

---

[9]   This failure undermines plaintiffs' quest for Rule 37 costs, as they knowingly left the defendants with a non-frivolous objection.   Hence, the Court awards no costs.

Freddie Mac and directs the parties to submit a protective order under which plaintiffs' counsel may review any loan-modification policy applied to Marla Holcomb.   And if that policy is disclosed on a public website then both defendants shall download and verbatim reproduce for plaintiffs the actual wording from same.   Such policy is certainly relevant to plaintiffs' allegation that, whether recklessly or deliberately, WFB induced Marla Holcomb into an engineered default and wrongful foreclosure.   That a policy forbade, induced, enabled, or in any material way influenced such reliance would unquestionably be relevant to plaintiffs' claims.

Similarly, it is not beyond the pale of reason to imagine that such equity-stripping may have occurred during the Holcomb foreclosure time frame.   *See* W. HUDSON, THE MONSTER: HOW A GANG OF PREDATORY LENDERS AND WALL STREET BANKERS FLEECED AMERICA--AND SPAWNED A GLOBAL CRISIS (Times Books, Oct. 2010); *Yates v. U.S. Bank Nat. Ass'n*, 2012 WL 6115016 at * 14 (E.D. Mich. Dec. 10, 2012) (affirming, in wrongful foreclosure suit, order to disclose lender information on decision to proceed with foreclosure, plus lender's internal policies; "it is very relevant to know: (1) whether Defendants complied with their own

17

internal policies, and (2) the reasons for denying the permanent modification and proceeding with foreclosure of the home.").

The Court is aware of defendants' sensitivity to Request # 4, which seeks the "files on all other borrowers who requested loan modification who were not in default at the time of the requests from January 2, 2011 to date." It is narrowed to those who were not in default when they sought a loan modification, yet were foreclosed upon, then claimed they were misled or deceived by WFB. The request is deemed served on *both* defendants. The Court will accept a proposed protective order in that regard. Defendants shall comply within 21 days of the date this Order is served.

## C. Interrogatories

The briefing has winnowed the remainder of the parties' dispute down to just a few items, *see* doc. 35 at 1-5, and they go to defendants' interrogatory responses. Plaintiffs want the defendants to identify all loan policies as applied to Marla Holcomb, and they want the identity of any individuals familiar with the specific facts of this case. Doc. 35 at 1. They also want to know the names of the individuals who created the

18

disclosed documents.   Doc. 30 at 13.

WFB insists its response is complete.   It says it has identified all individuals with knowledge of Marla Holcomb's foreclosure, doc. 30 at 13, and it "does not know the identities of all such individuals, and the names on the documents [that it] produced are reasonably available to the [p]laintiffs."   *Id.*   Plaintiffs fail to say what more the defendants can do on that score, so their motion to compel is denied to that extent.

Next, plaintiffs want to know from Freddie Mac "any facts regarding the disposition of the contents of the home foreclosed upon which tangible items were not collateral for the loan at issue."   Doc. 35 at 1.   They apparently reference their Interrogatory # 6 to Freddie Mac, which asked it to identify individuals who removed "content from the subject property."   Doc. 30 at 16.   This defendant has responded: "Freddie Mac does not know who removed the items. . . ."   *Id.*   Plaintiffs do not specify what more can be compelled from this defendant, so their motion is denied on these grounds, too.

The Holcombs move for a protective order.   Doc. 36.   They want to postpone their January 16, 2013 depositions until after they have had the

benefit of the discovery sought here.  *Id.* at 2-3.  Discovery currently ends on January 21, 2013.  Doc. 27. The Court grants the motion and extends discovery until March 1, 2013.  The parties shall work out new deposition dates within that time frame.  Defendants' motion to compel plaintiffs' depositions for January 16, 2013, is denied.  Doc. 38.

## IV.   CONCLUSION

The Court **GRANTS** in part and **DENIES** in part plaintiffs' Motion to Compel (doc. 28). The Court **DENIES** defendants' oral-argument motion, doc. 32, grants WFB's motion to withdraw its admissions, doc. 31, and **GRANTS** plaintiffs' motion to amend their motion to compel, doc. 33, as well as their motion for a protective order.  Doc. 36.  Defendants' motion to compel plaintiffs' depositions for January 16, 2013, (doc. 38) is **DENIED**.

**SO ORDERED**, this __11th__ day of January, 2013.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

20