# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

MARLA GOULD HOLCOMB,
and HENRY C. HOLCOMB,

    Plaintiff,

v.

WELLS FARGO BANK, N.A. and
FEDERAL HOME MORTGAGE
CORPORATION, d/b/a FREDDIE
MAC,

    Defendants.

Case No.   CV412-111

# ORDER

Previously in this lender-liability case, the Court partially granted a motion to compel brought by plaintiffs Marla and Henry Holcomb against defendants Wells Fargo Bank, N.A. (Wells Fargo) and the Federal Home Loan Mortgage Association (Freddie Mac). Doc. 41, *reported* at 2013 WL 142703. Over the defendants' opposition, doc. 45, plaintiffs move for reconsideration. Doc. 41. They also amended their complaint, doc. 44, which defendants move to strike. Doc. 48. Finally, plaintiffs move for partial summary judgment (now before the district judge), doc. 51, while defendants move for a protective order. Doc. 49.

## I.  BACKGROUND

To recapitulate, Marla Holcomb owned a North Georgia home and was current on its mortgage when she asked Wells Fargo to lower her interest rate.[1]  Doc. 10 at 3.  A Wells Fargo representative told her that Wells Fargo would not consider a loan modification until she first missed three monthly mortgage payments.  *Id.*  So, she did.  *Id.*  Holcomb's default triggered the bank's mortgage foreclosure process, but Wells Fargo's attorney assured her that the loan was approved "for a special repayment program."  *Id.*  Two follow-up letters confirmed this.  *Id.* Wells Fargo's attorney later sent Holcomb a "notice of foreclosure sale," which Wells Fargo told her to disregard, so she did.  *Id.*

Holcomb next received a Wells Fargo letter announcing that it had changed its mind and would not modify the loan.  Just days later -- on January 3, 2012 -- Wells Fargo foreclosed on her home.  Doc. 10 at 3. But Holcomb was unaware of that until January 11, 2012, when she received two more Wells Fargo letters.  The first invited her to explore

---

[1]  Again, the Court is accepting as true the factual assertions contained in plaintiffs' complaint (doc. 1-1), as well as their portion of the Joint Status Report.  Doc. 10.  As noted, plaintiffs have since filed an amended complaint, which defendants move to strike.  For the purposes of this Order, however, it is not necessary to reference it.

her options to avoid foreclosure. The second was from Wells Fargo's lawyer, informing her that "Freddie Mac now owns the property . . . as the result of a foreclosure." *Id.*

Alleging that she had been misled, never received notice of the foreclosure sale, and could have cured her default, Holcomb sued. Doc. 1-1; doc. 10 at 3. She contends that the defendants committed various lender-liability wrongs. Her husband joins her because "he used the home with his wife and has been affected by the actions against [her]." Doc. 10 at 3-4. Wells Fargo denies liability and insists that it timely and consistently communicated with Marla Holcomb but she failed to transmit required documentation to it in a timely manner. It denies it ever misled her, too. Doc. 10 at 4; doc. 30-7 at 11-12. And Freddie Mac insists it simply purchased the property at foreclosure, breaching no duty to the Holcombs. Doc. 4; doc. 10 at 4.

Those alleged facts drove plaintiffs' discovery requests, which were aimed at uncovering all the facts, policies, documents and people behind Holcomb's loan modification and foreclosure, plus that of similarly

situated other borrowers. [2]  Unhappy with defendants' responses,

plaintiffs moved to compel, complaining that the defendants wrongfully

asserted privileges, made bad-faith "clarification" requests prior to

answering, and failed to provide adequate responses (by stating, e.g., that

when the information is obtained it will be provided pursuant to a

mutually agreeable arrangement). Doc. 28 at 1.

After setting forth the governing standards, doc. 41 at 5-6, the Court

rejected some of defendants' arguments. It concluded that plaintiffs

satisfied the duty-to-confer requirement. *Id.* at 6-13. The parties had

communicated back and forth, and that led the defendants to produce

requested information -- *prior* to plaintiffs' motion to compel. *Id.* at

15-16. The Court also accepted Wells Fargo's representation that it had

supplied plaintiffs with a document index referencing the (loan-file based)

documentation that it produced to each of plaintiffs' document requests.

The Court also overruled Wells Fargo's objections to the extent that

Wells Fargo was withholding any documents based on its own (or any

---

[2]  As defendants correctly point out in their motion for a protective order against disclosure of loan documentation in similar cases, this is not a class action case. Doc. 49-1 at 5. Because the time for plaintiffs to respond to that motion has not yet elapsed, the Court will address it later.

other's) business policies, much less any "law or privilege." Wells Fargo did not carry its burden of identifying any law or privilege and showing why it applies here. *Id.* at * 16. Finally, the Court deemed plaintiffs' request made to Freddie Mac and directed it to comply, though it narrowed the request.[3] *Id.* at * 16-17.

## II. ANALYSIS

### A. Document Request

Moving for reconsideration, plaintiffs complain that defendants in fact have *not* provided a document index elaborate enough to enable them to conduct a meaningful review of the furnished documents. Doc. 42 at 2-3. Plaintiffs' counsel is "unable to decipher the content" of what defendants have produced, and he cites *Residential Contractors, LLC v. Ace Prop. & Cas. Ins. Co.*, 2006 WL 1582122 at * 3 (D. Nev. 2006). *Id.* at 3.

Defendants remind that they identified which Bates stamped documents specifically respond to which document request. This includes the entire loan file (Request 2) and plaintiffs' request for the loan

---

[3]    However, it also invited a motion for a protective order, doc. 41 at 18, and defendants have accepted that invitation. Doc. 49.

history (Request 3). They again furnish the Bates numbers. Doc. 45 at 4. Plaintiffs' own documentation supports this. Doc. 42-1 at 3-4. And the Court agrees with defendants that on its face Fed. R. Civ. P. 34 does not require more. For example, it does not require a party to decipher or interpret the content of each document produced -- that can be achieved by other means, such as an Fed. R. Civ. P. 30(b)(6) deposition. Rarely will courts order more. *Barnes v. District of Columbia*, 281 F.R.D. 53, 55-56 (D.D.C. 2012).

For that matter, Rule 34(2)(E)(i) says that "[a] party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request[.]" *Id*. The defendants need only produce their documents in "a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms," and they "need not produce the same electronically stored information in more than one form." Rule 34(2)(E)(ii) & (iii).

Still, *Residential Contractors* shows that in extraordinary cases the courts can require more. In that case the plaintiff turned over 41 large boxes worth of documents in discovery but failed to include an index.

*Residential Contractors*, 2006 WL 1582122 at * 1. That was not enough

under Fed. R. Civ. Pro. 34(b)(2)(E)(i):

> [S]ome form of table of contents or index of the materials produced should be provided. . . . Such a table of contents or index is reasonably necessary to determine, for example, from which entity or department the documents have been produced or the type of file in which they are contained. The Court, therefore, directs the Plaintiff to prepare and provide to Defendant a table of contents or index for the documents contained on CDs. In so doing, Plaintiff is not required to index each document in each file. Plaintiff, however, is required to identify the files it has produced and in which boxes or group of document numbers the files are located.

*Residential Contractors*, 2006 WL 1582122 at * 2-3.

The normal course, however, is to simply furnish documents as they are normally kept and designate which documents pertain to which document request. *See, e.g., F.T.C. v. Johnson*, 2012 WL 2138108 at * 2 (D. Nev. June 12, 2012) ("Here, the Court finds that Plaintiff's production of documents is sufficient under Rule 34. Plaintiff produced the documents as they are kept in the usual course of business and further labeled some of the documents to correspond with Defendant['s] . . . requests. Plaintiff has included a searchable concordance and an index that identifies the documents' source, description and bates-range.").

Here, the document production was adequate under Rule 34. There is no suggestion that they were not produced as they were kept in the usual course of business, and they were identified (via Bates stamp numbers) to correspond with each of the plaintiffs' document requests. Nor was there any need to "produce the same electronically stored information in more than one form."  Fed. R. Civ. P. 34(2)(E)(ii) & (iii).

It may be true that the produced documents are jargon-filled or laden with otherwise unintelligible coding.  But nothing compels a business to operate using only a mainstream form of communication, and again, other discovery methods may be employed.  Counsel, however, are directed to confer and in good-faith attempt informal resolution of any "deciphering" issues (e.g., defense counsel or staff could sit down with plaintiffs' counsel and explain any coding or abbreviations -- or have a corporate representative provide a glossary of some sort).

In their reply brief plaintiffs move this Court to strike defendants' answer, if not impose a less drastic sanction.  Doc. 46 at 7.  They point to defendants' supplemental document production response -- as commanded by this Court, doc. 45 at 16 (all "policies and guidelines

pertaining to the loan modification request at issue in this matter"); *id.* at

17 (directing defendants to download any such policy from any public

website and produce to plaintiffs the actual wording of it). They

complain that it *fails* to in any way reveal the loan-modification policy in

question. Doc. 46 at 2. Hence, they conclude, there never was a policy.

"The logical assumption[," then, "is [that] the individual who told Mrs.

Holcomb three defaults were required engaged in fraudulent conduct."

*Id.* In that these now "established" facts emerge behind a wall of

evasion, plaintiffs conclude, the only reasonable conclusion is that the

defendants fraudulently induced Marla Holcomb to default on her loan,

and the two streams of misconduct "warrant[] a dismissal of the

Defendants' answer and defenses." *Id.*

The district judge on a properly supported summary judgment

motion, or a jury, *may* decide in plaintiffs' favor on her fraud-based

claims, but this Court is resolving only *discovery* phase matters here, and

there is no sufficient showing of discovery abuse to strike defendants'

9

answer or defenses.[4]   Should the defendants "suddenly" produce a

relevant loan modification policy in sandbag fashion, *or* if they are shown

to have hidden documentation about that policy, *then* plaintiffs may seek

sanctions and the Court will grant them their due.   *Scruggs v. Int'l Paper*

*Co.*, 278 F.R.D. 698, 701-02 (S.D. Ga. 2012) (discovery sanctions

spectrum).

In the meantime, plaintiffs are now free to claim that they sought all

documentation reflecting the loan modification policy governing the

Holcomb mortgage loan, and that the documentation defendants have

furnished shows that in fact there *was none*.   Indeed, in moving for

summary judgment, they have done just that.[5]   Doc. 51 at 11.   That is

---

[4]   Though, it cannot go unnoticed that in her summary judgment affidavit Marla
Holcomb has consistently *failed* to identify by name any Wells Fargo official she claims
to have induced her default.   Doc. 51-1 at 3 ¶ 3 ("I was informed the Bank would not
consider a modification if a loan was current; a borrower had to be in default for three
payments."); *id.* at 4 ¶ 4 ("I contacted the Bank and was informed the modification was
still under review and the foreclosure would be suspended.").

[5]   *See* doc. 51 at 11 ("To be considered for a loan modification, Ms. Holcomb was
informed by a Wells Fargo representative that her loan had to be in default for at least
three monthly payments. She followed that instruction. However, during discovery no
such policy has been produced by the Defendants. Consequently, that representation
or requirement was false.") (footnote omitted).

their right, as is their right to object and seek sanctions should their requested documentation suddenly pop up in service to the defense.

## B. Interrogatory Request

"Parties must answer interrogatories fully with true, explicit, responsive, complete and candid answers." *Barnes v. District of Columbia*, ___ F.R.D. ___, 2012 WL 4466669 at * 3 (D.D.C. Sep. 28, 2012) (quotes and cite omitted). The Court's last Order noted plaintiffs' quest to have identified all loan policies and people involved with Marla Holcomb's foreclosure. Doc. 41 at 18-19. Wells Fargo, this Court noted, then insisted its response was complete, and plaintiffs failed to say what more it could do. *Id.* at 19.

In their reconsideration motion plaintiffs complain that the defendants have failed to identify any more witnesses. Doc. 42 at 5. Defendants reply that they "have yet to determine who may provide testimony on [their] behalf." Doc. 45 at 8. They want to first learn more from the plaintiffs -- by deposing them -- "to more fully understand the extent of [p]laintiffs' allegations and the facts and documents which

[p]laintiffs claim support their allegations." *Id.* They then promise to supplement their response. *Id.*

The Court will clear up any confusion here. Defendants' obligation to respond was not tied to plaintiffs' knowledge or the facts ascertainable from their deposition testimony. It is undisputed that Marla Holcomb's mortgage loan generated a loan *file* and that she claimed to have dealt with Wells Fargo in pursuit of a loan modification. Indeed, she now swears to it. Doc. 51-1 at 1-2. Marla Holcomb is entitled to all information, including the names of anyone with knowledge of how her loan was handled (including her claim that Wells Fargo induced her default) -- *now*.

Defendants say they have identified all that it is reasonably possible to disclose. Should plaintiffs thus discover others which, based on pretense or outright lie, defendants have obscured, then they may move for sanctions and the Court will be inclined to grant them, including the Fed. R. Civ. P. 37(a)(5)(A) costs plaintiffs seek here. *Scruggs*, 278 F.R.D. 698 at 701-02 (noting sanctions for "[o]bstructionist discovery tactics").

## C.  Motion To Strike

Plaintiffs erred in amending their complaint without leave of court. In that defendants filed an Answer and 21 days have since elapsed, the plaintiffs were not free simply to amend their complaint without leave of court -- without filing a *motion* for leave to amend their complaint.  Fed. R. Civ. P. 15(a)(B).  But there was another restriction which evidently both sides overlook.  The Court's Scheduling Order set June 30, 2012 as the deadline for filing a motion to amend, doc. 9 at 1, and it was not extended by the Court's later Order extending other deadlines.  Doc. 27.

So the "Amended Complaint," doc. 43, as corrected, doc. 44, is construed as a motion to amend the scheduling order under Fed. R. Civ. P. 16(b).[6]  *Oravec v. Sunny Isles Luxury Ventures, L.C.,* 527 F.3d 1218, 1231-32 (11th Cir. 2008) (applying Fed. R. Civ. P. 16(b)'s "good cause" scheduling order modification standard before applying Rule 15(a)'s amendment standard); *Sosa v. Airprint Systems, Inc.,* 133 F.3d 1417, 1419 (11th Cir. 1998) (same).  Rule 16(b) requires that parties show good cause for modifying the scheduling order; to proceed directly to the merits of an

---

[6]  Hence, defendants' Rule 15-based arguments (doc. 48-1 at 2-3) miss the mark.

untimely filed motion "would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *Sosa*, 133 F.3d at 1419.

To show Rule 16(b) good cause, the movant must demonstrate that the scheduling deadline could not have been met despite his diligent efforts to do so. *Oravec*, 527 F.3d at 1232. Plaintiffs say that their amended complaint adds Count Five, which seeks damages for emotional distress and attorney fees. Doc. 53 at 1. They blame their delay in raising these claims on "extended efforts to require the [d]efendants to respond to discovery requests." *Id.* at 2. And "[i]t was not until January, 2013, that certainty was established regarding the issue of the modification of loan policy -- there is none. That placed a new perspective on the litigation." *Id.* They remind that they sought attorney fees in their original complaint. *Id.* (citing doc. 1-1 ¶ 28).

The Court denies plaintiffs' Rule 16 motion (doc. 44) and grants the defendants' motion to strike. Doc. 48. The alleged conduct driving an emotional distress claim -- fraudulently inducing a default -- has been alleged from the start of this litigation. That it may since have been

14

revealed that no written policy engendering it exists does not constitute a substantial enough new revelation to the supply good cause needed here.

## III. CONCLUSION

The plaintiffs' motion for reconsideration is therefore **GRANTED** in part and **DENIED** in part. Doc. 42.[7] The defendants' motion to strike (doc. 48) is **GRANTED**; the Court will disregard the amended complaint and this case shall proceed on the original. The Court will rule on the defendants' motion for a protective order (doc. 49) after plaintiffs have responded to it. But until further notice the Court **STAYS** its

---

[7] Plaintiffs have responded to defendants' motion to strike, *see* doc. 48 &53, but they still have time to respond to the protective-order motion, doc. 49. So the Court will not reach the latter motion now. But it cannot go unnoticed that, despite the claimed discovery logjam, the plaintiffs have not been inhibited from moving for summary judgment on liability, as well as a partial award of damages (the remaining damages claims to be resolved at trial). *See* doc. 51 at 13-13 (plaintiffs seek $160,000 in "conversion" damages, plus the loss of their home's contents, etc.).

For that matter, the defendants have made a substantial burdensomeness showing in their motion for a protective order. Doc. 49-1. So until further notice (plaintiffs still have time to respond to that motion), the Court **STAYS** its directive (doc. 41 at 18) that defendants produce documentation in response to Plaintiffs' Request for Production 4. And given the plaintiffs' demonstrated ability to move this case forward (move for summary judgment on liability), the current March 1, 2013 deadline, as defendants insist, doc. 45 at 12, is adequate.

directive (doc. 41 at 18) that defendants produce documentation in response to Plaintiffs' Request for Production 4.

**SO ORDERED**, this 4Th day of February, 2013.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA