UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

MARIA GOULD HOLCOMB, )
and HENRY C. HOLCOMB, )
)
    Plaintiff, )
)
v. ) Case No. CV412-111
)
WELLS FARGO BANK, N.A. and )
FEDERAL HOME MORTGAGE )
CORPORATION, d/b/a FREDDIE )
MAC, )
)
    Defendants. )

# ORDER

Another round of motions has been filed in this slow-grind, lender-liability case.[1] Docs. 51, 60, 71, 75, 77 & 78. Some background: Plaintiffs Marla and Henry Holcomb sued defendants Wells Fargo Bank, N.A. (WFB) and the Federal Home Loan Mortgage Association (Freddie Mac). *See* doc. 41, *reported* at 2013 WL 142703. In essence, they allege that Marla owned a North Georgia home and was current on its mortgage

---

[1] *See Holcomb v. Wells Fargo Bank, N.A.*, 2013 WL 435974 at * 1 (S.D. Ga. Feb. 4, 2013) (motions to amend, to strike, for a protective order, and for reconsideration); *Holcomb v. Wells Fargo Bank, N.A.*, 2013 WL 142703 at * 7 (S.D. Ga. Jan. 11, 2013) (other discovery and case management issues).

when she asked WFB to lower her interest rate.[2] Doc. 44 at 2-3 ¶ 10. An WFB representative told her that WFB would not consider a loan modification until she first missed three monthly mortgage payments. *Id.* So, she did. *Id.* Holcomb's default triggered the bank's mortgage foreclosure process, but WFB's attorney assured her that the loan was approved "for a special repayment program." *Id.* at 3 ¶ 12. Two follow-up letters confirmed this. *Id.* WFB's attorney later sent Holcomb a "notice of foreclosure sale," which WFB told her to disregard, which she did. *Id.* at 3-4.

Holcomb next received a WFB letter announcing that it had changed its mind and would not modify the loan. Just days later -- on January 3, 2012 -- WFB foreclosed on her home. Doc. 44 at 4. But Holcomb was unaware of that until January 11, 2012, when she received two more WFB letters. The first invited her to explore her options to avoid foreclosure. The second was from WFB's lawyer, informing her that "Freddie Mac now owns the property . . . as the result of a foreclosure." *Id.*

---

[2] Again, the Court is accepting as true the factual assertions contained in plaintiffs' complaint (doc. 1-1), as amended, doc. 44, as well as their portion of the Joint Status Report. Doc. 10.

"Nevertheless, communications regarding the modification continued prior and subsequent to the foreclosure." Doc. 44 at 5. "No notice was provided to Ms. Holcomb that the suspension of the foreclosure would terminate or that she could bring payments current to avoid that result was received. She could have cured that default. Later in January, 2012 Mr. and Ms. Holcomb learned they were to be evicted from the subject property. The home on the land contained many tangible items of the Plaintiffs. All tangible personal property of the Plaintiffs has been removed from the subject property." *Id.* (numeration omitted).

Alleging that she had been misled, never received notice of the foreclosure sale, and could have cured her default, Holcomb sued. Doc. 1-1; doc. 44. She contends that the defendants committed various lender-liability wrongs. Her husband joins her because "he used the home with his wife and has been affected by the actions against [her]." Doc. 10 at 3-4. WFB denies liability and insists that it timely and consistently communicated with Marla Holcomb but she failed to transmit required documentation to it in a timely manner. It denies it ever misled her, too. Doc. 10 at 4; doc. 30-7 at 11-12. And Freddie Mac

insists it simply purchased the property at foreclosure, breaching no duty to the Holcombs. Doc. 4; doc. 10 at 4.

Plaintiffs move for partial summary judgment, doc. 51, for an extension of time on their briefing, doc. 60, for an extension of time within which leave to file expert witness reports, doc. 75, and to "dismiss" some defenses. Doc. 77. Defendants move to compel, doc. 71, as well as for complete summary judgment. Doc. 78.

The dispositive motions (docs. 51, 77 & 78) are before the district judge. The extension and compulsion motions (docs. 60, 71 & 75) are before the undersigned. Defendants do not oppose plaintiffs' briefing extension motion (doc. 60), so it is **GRANTED**. But they do oppose the plaintiffs' expert witness extension motion (docs. 75), and move to compel discovery responses from them. Doc. 71.

The Court has reviewed defendants' fully briefed summary judgment motion and finds that it packs enough punch to knock the extension/compel motions (docs. 71 & 75) into the mootness zone. Defendants have meticulously retraced every pre- and post-foreclosure step, doc. 78-1 at 4-6, have shown that the core of plaintiffs' case is

premised on a promise (to forestall foreclosure and review Marla's loan) that was never made, and even if it was, Marla Holcomb had notice and opportunity to make the foreclosure-avoiding payment, yet did not. *Id.* at 10-12.

Plaintiffs' response brief (doc. 84) fails to rebut much of defendants' showing, including these assertions, which defendants raised while negating plaintiffs' promissory estoppel claim:

> In fact, in her final attempt to delay the foreclosure sale, Mrs. Holcomb still failed to submit all of the information Wells Fargo needed to consider her request for a modification. On December 30, 2011, Mrs. Holcomb faxed a "Uniform Borrower Assistance Form" to Wells Fargo that required her to identify her "monthly household income" and expenses. She *understated* her monthly household income by almost $14,000 and even *understated* her personal monthly income by more than $3,000. (Ex. C, ¶ 24 and Ex. P.) Ultimately, Mrs. Holcomb never submitted all of the information and documents needed for Wells Fargo to process the request.

Doc. 78-1 at 15 (emphasis added); *see also* doc. 78-2 at 6 ¶ 27; doc. 84 at 6 ¶ 27 (plaintiffs insisting that "Mr. Holcomb was not an obligor on the loan," but of course, that was not what was being asked; rather, "household income" was requested; plus, plaintiffs ignore defendants' assertion that Marla Holcomb "even understated her *personal* monthly income by more than $3,000.").

That smacks of bank fraud, which "is defined as the knowing execution, or attempted execution, of 'a scheme or artifice (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of *false* or fraudulent pretenses, *representations*, or promises.' 18 U.S.C. § 1344." *United States v. Irvin*, 682 F.3d 1254, 1267 (10th Cir. 2012) (emphasis added). To that end, "a false statement is material if it has a natural tendency to influence, or is capable of influencing, the decision of the decisionmaking body to which it was addressed." *Neder v. United States*, 527 U.S. 1, 16 (1999) (quotes and alteration omitted); *Irvin*, 682 F.3d at 1267.[3]

It may be that defense counsel here are ethically blocked from threatening criminal prosecution to obtain an advantage in a civil case,[4]

---

[3] "Financial loss is not the only cognizable injury under the bank fraud statute." 9 C.J.S. BANKS AND BANKING § 793 (Mar. 2013). In fact, "[i]t is not necessary that the scheme succeed, or that the bank suffer actual loss or actually be defrauded, deceived or influenced, or that accused personally benefit. It has been held that a risk of loss is sufficient, including a risk of exposure to civil liability" *Id.* (footnotes omitted). And those who knowingly mislead federally insured banks also may be prosecuted for making false statements. *See* 18 U.S.C. § 1014; *United States v. Seda*, 978 F.2d 779, 781-782 (2d Cir. 1992), *overruled on other grounds by United States v. Chacko*, 169 F.3d 140 (2d Cir. 1999).

[4] *See* Ga. R. Prof. Conduct 3.4(h); *see also Boswell v. Gumbaytay*, 2009 WL 1515884 at

but nothing stops this Court from referring matters to the U.S. Attorney for criminal investigation. More importantly, no one may engage in criminal misconduct and then use this Court as part of an ongoing effort to benefit from it. At bottom, good cause exists to **DEFER** to the district the remaining motions (docs. 71 & 75) on probable mootness grounds. Accordingly, the Court **GRANTS** as unopposed plaintiffs' briefing-extension motion, doc. 60, but **DEFERS** the remaining discovery-based motions (docs. 71 & 75) to the district judge.

  **SO ORDERED** this __10th__ day of June, 2013.

_/s/ G.R. Smith_
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

\* 7 (M.D. Ala. June 1, 2009) (quoting Alabama's ethics code R. 3.10: "[a] lawyer shall not present, participate in presenting, or threaten to present criminal charges solely to obtain advantage in a civil matter."), cited in 6 BUS. & COM. LITIG. FED. CTS. § 66:8 (*Incivility throughout discovery*) (3d ed. Dec. 2012).